UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

Case No.:

OASIS CAPITAL, LLC,

          Plaintiff,

v.

AGRITEK HOLDINGS, INC. and
BARRY MICHAEL FRIEDMAN,

          Defendants.

## COMPLAINT

Plaintiff Oasis Capital, LLC ("**Oasis**"), by and through its undersigned counsel, hereby files this Complaint against Defendants Agritek Holdings, Inc. ("**Agritek**") and Barry Michael Friedman ("**Friedman**") (collectively, "**Defendants**"). In furtherance of the same, Oasis respectfully states as follows:

### NATURE OF ACTION

1.    This action ("**Action**") arises out of Defendants' breaches of and Defendant Friedman's fraudulent representations surrounding an assignment of notes, dated July 29, 2019, and two promissory notes dated, September 18, 2019, and May 5, 2020.

### JURISDICTION AND VENUE

2.    This Court has jurisdiction over this Action pursuant to 28 U.S.C. § 1332, in that there is diversity of citizenship between Oasis and Defendants, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

3. Venue is proper in the District of Puerto Rico pursuant to the terms of the Note Purchase and Assignment Agreement (the "**Assignment**") (the Assignment is attached hereto as "Exhibit A"), dated July 29, 2019, entered into between Oasis and L2 Capital, LLC ("**L2 Capital**"). Defendant Agritek accepted and agreed to the Assignment. *See* Exhibit A at 7.

## THE PARTIES

4. Oasis is a limited liability company organized under the laws of Puerto Rico, which at all times relevant to this Action, had its principal place of business in Dorado, Puerto Rico. Adam Long is the sole member of Oasis and is a citizen of Puerto Rico.

5. Defendant Agritek is a Delaware corporation, which at all times relevant to this Action, had its principal place of business in Miami, Florida.

6. Upon information and belief, Defendant Friedman is a citizen of Florida. Defendant Friedman is Defendant Agritek's former President, Chief Executive Officer and sole Director owning 100% of Defendant Agritek's Class B Preferred Stock. As a result of the aforementioned ownership, Defendant Friedman exercised control in determining the outcome of corporate transactions or other matters of Defendant Agritek, including the election of directors, mergers, consolidations, and the sale of all or substantially all of Defendant Agritek's assets. Defendant Friedman also had the power to prevent or cause a change in control.

## RELEVANT NON-PARTY

7. L2 Capital is a limited liability company organized under the laws of the State of Kansas. L2 Capital is owned by the principal of Oasis.

## BACKGROUND

8. Defendant Agritek has promoted itself as a professionally managed real estate investment and holding company focused on the acquisition, ownership and management of

specialized zoned industrial and retail properties in the cannabis industry.

9. On May 8, 2018, Defendant Agritek entered into a securities purchase agreement (the "**SPA**") with L2 Capital pursuant to which Defendant Agritek issued and sold a promissory note to L2 Capital in the aggregate principal amount of up to $565,555.00 (the "**May 2018 Note**") (the May 2018 Note is attached hereto as "Exhibit B"), which was convertible into shares of common stock of Defendant Agritek.

10. The May 2018 Note accrued interest at a rate of 9% per annum. The aggregate principal amount of up to $565,555.00, which was to be funded in tranches.

11. Between May 22, 2018, and November 9, 2018, L2 Capital funded $392,777.50 under the May 2018 Note in seven (7) tranches. *See* Exhibit B at 1.

12. Between December 13, 2018, and January 10, 2019, L2 Capital funded an additional $166,666.55 under the May 2018 Note in four (4) tranches.

13. Subsequently, Defendant Agritek defaulted on the May 2018 Note by failing to repay at the maturity date for each tranche. *See* Exhibit B at § 3.1.

14. In addition, Defendant Agritek defaulted on the May 2018 Note by failing to timely file its first quarter of 2019 Form 10-Q pursuant to Section 3.9 of the May 2018 Note and by entering into another convertible note on or about April 26, 2019 and May 31, 2019, without L2 Capital's written consent in direct violation of Section 3.18 of the May 2018 Note. Section 3.18 of the May 2018 Note provides, in pertinent part, that:

> Prohibition on Debt and Variable Securities. So long as the Note is outstanding, the Borrower shall not, without written consent of the Investor, issue any Variable Security (as defined herein), unless (i) the Borrower is permitted to pay off the Note in cash at the time of the issuance of the respective Variable Security and (ii) the Borrower pays off the Note, pursuant to the terms of the Note, in cash at the time of the issuance of the respective Variable Security. A Variable Security shall mean any security issued by the Borrower that (i) has or may have conversion rights of any kind, contingent, conditional or otherwise in

which the number of shares that may be issued pursuant to such conversion right varies with the market price of the common stock; (ii) is or may become convertible into common stock (including without limitation convertible debt, warrants or convertible preferred stock), with a conversion or exercise price that varies with the market price of the common stock, even if such security only becomes convertible or exercisable following an event of default, the passage of time, or another trigger event or condition; or (iii) was issued or may be issued in the future in exchange for or in connection with any contract, security, or instrument, whether convertible or not, where the number of shares of common stock issued or to be issued is based upon or related in any way to the market price of the common stock, including, but not limited to, common stock issued in connection with a Section 3(a)(9) exchange, a Section 3(a)(10) settlement, or any other similar settlement or exchange.

15. In or around February 2019, Defendant Friedman met with L2 Capital's principal in Dorado Beach, Puerto Rico. During this in-person meeting in Puerto Rico, Defendant Friedman represented that Defendant Agritek needed additional capital in order to pay its auditors to complete its financials. In addition, Defendant Friedman represented that the additional funding would go towards developing a footprint in Puerto Rico in connection with Defendant Agritek's cannabis business.

16. As a result of this meeting with Defendant Friedman, L2 Capital agreed to enter into another SPA with Defendant Agritek on February 7, 2019, pursuant to which Defendant Agritek issued and sold a promissory note to L2 Capital in the aggregate principal amount of up to $565,555.00 (the "**Feb. 2019 Note**") (the Feb. 2019 Note is attached hereto as "Exhibit C"), which was also convertible into shares of common stock of Defendant Agritek.

17. The Feb. 2019 Note also accrued interest at a rate of 9% per annum and the aggregate principal amount of up to $565,555.00, which was to be funded in tranches.

18. Between February 8, 2019, and April 3, 2019, L2 Capital funded $276,666.41 under the Feb. 2019 Note in five (5) tranches. *See* Exhibit C at 1.

19. Between May 7, 2019, and June 27, 2019, L2 Capital funded an additional

$222,222.00 under the Feb. 2019 Note in two (2) tranches.  In May 2019, and June 2019, Defendant Friedman contacted L2 Capital's principal and represented that additional funds were needed under the Feb. 2019 Note to pay for Defendant Agritek's auditors and accountants.

20. On April 15, 2019, Defendant Agritek defaulted on its obligations under the Feb. 2019 Note, by failing to timely file its first quarter Form 10-Q pursuant to Section 3.9 of the Feb. 2019 Note. In addition, Defendant Agritek defaulted on the Feb. 2019 Note by entering into the other convertible note on or about April 26, 2019, and May 31, 2019, without L2 Capital's written consent in direct violation of Section 3.18 of the Feb. 2019 Note. Section 3.18 of the Feb. 2019 Note is identical to Section 3.18 of the May 2018 Note.

21. On July 29, 2019, L2 Capital sold and assigned Defendant Agritek's post December 2018, principal balance of $166,666.50 plus interest under the May 2018 Note and the $498,888.41 principal balance plus interest under the Feb. 2019 Note (the May 2018 Note and the Feb. 2019 Note are hereinafter referred to as the "**Original Notes**") to Oasis pursuant to the Assignment. Pursuant to the terms of the Assignment, at least $943,535.07 remained outstanding under the Original Notes.

22. Under the terms of the Assignment, Defendant Agritek agreed to "treat [Oasis] as a party to, and having all rights of [L2 Capital] with respect to, the portion of the Original Notes acquired by [Oasis] pursuant to [the] [Assignment]."[1] Exhibit A at § 4.2(a), *see also id.* at 7.

23. In or about August 2019, Defendant Friedman contacted Oasis' principal and represented that Defendant Agritek required additional funds for its operating costs. Specifically, Defendant Friedman stated that Defendant Agritek needed the funds to pay its auditors for its current Form 10-Q and other business expenses. During this same period, Defendant Friedman

---

[1] In light of the Assignment, and as discussed herein, Oasis obtained all of L2 Capital's rights with respect to the Original Notes.

stated to Oasis' principal that he was not paying himself or taking any disbursements out of Defendant Agritek.

24. As a result of these representations, Oasis agreed to enter into a SPA with Defendant Agritek on September 18, 2019, pursuant to which Defendant Agritek issued and sold a promissory note to Oasis in the aggregate amount of up to $677,000.00 (the "**Sept. 2019 Note**") (the Sept. 2019 Note is attached hereto as "Exhibit D").

25. The Sept. 2019 Note accrued interest at a rate of 9% per annum and the aggregate principal amount of up to $677,000.00, which was funded in tranches.

26. Between September 18, 2019, and May 1, 2020, Oasis funded $600,000.00 under the Sept. 2019 Note in five (5) tranches. *See* Exhibit D at 1.

27. Prior to each funding of the Sept. 2019 Note on February 7, 2020, March 4, 2020, April 2, 2020, and May 1, 2020, Defendant Friedman continued to state that Defendant Agritek required funds for auditor and accounting expenses for Defendant Agritek's financials, and other operating expenses. Notwithstanding, during a conversation with Oasis' principal in February 2020, Defendant Friedman stated that Defendant Agritek was moving in a positive direction.

28. By April 2020, Defendant Friedman represented to Oasis' principal that Defendant Agritek had changed its business to a gaming platform and that Defendant Agritek still needed additional funding to stay alive.

29. In April 2020, Defendant Friedman made multiple representations that Defendant Agritek had major expenses, including legal and auditor costs. Each time Defendant Friedman made these representations, he also stated that he was not taking any money out of Defendant Agritek or paying himself.

30. As a result, Oasis agreed to enter into a subsequent SPA with Defendant Agritek

on May 5, 2020, pursuant to which to which Defendant Agritek issued and sold a promissory note to Oasis in the aggregate principal amount of up to $565,555.55 (the "**May 2020 Note**") (the May 2020 Note is attached hereto as "Exhibit E").

31. The May 2020 Note accrued interest at a rate of 9% per annum and the aggregate principal amount of up to $565,555.00, which was to be funded in tranches.

32. Between May 5, 2020, and April 6, 2021, Oasis funded $190,000.00 under the May 2020 Note in nine (9) tranches. Prior to Oasis' funding of each tranche of the May 2020 Note, Defendant Friedman continued to state that Defendant Agritek required the funds to pay auditor for its financials and to complete its public filings.

33. Defendant Agritek defaulted on the Sept. 2019 Note on November 14, 2019, when Defendant Agritek failed to timely file its Form 10-Q as set forth in section 3.9 of the Sept. 2019 Note. On December 24, 2019, Defendant Agritek entered into a subsequent financing in violation of section 3.18 of the Sept. 2019 Note. Defendant Agritek also failed to repay each tranche upon maturity under the Sept. 2019 Note. *See* Exhibit D at section 3.1.

34. Defendant Agritek defaulted on the May 2020 Note by failing to repay each tranche upon maturity in violation of section 3.1 of the May 2020 Note, which is also a cross-default of the Feb. 2019 Note. *See id.* at section 3.15; *see also* Exhibit E at section 3.1.

35. Subsequent to the defaults, Defendant Friedman told Oasis' principal on December 22, 2021, that he had also personally funded Defendant Agritek to keep it alive for investors like Oasis, and that he was personally out of substantial funds as a result.

36. Oasis discovered in or about August 2022, that all of Defendant Friedman's representations were complete fabrications. Defendant Friedman was not infusing his own money into Defendant Agritek as he stated on numerous occasions. In fact, Defendant Friedman was

removing assets from Defendant Agritek, including, but not limited to the assets of the new gaming platform and paying himself.

37. During this period, Defendant Friedman refused to provide Defendant Agritek's auditors and accountants with complete financial information regarding the gaming platform and Defendant Agritek's financials were never completed. Finally, Defendant Friedman abandoned Defendant Agritek and it never became current in its public filings.

38. To date, Defendant Agritek remains in default of the Original Notes, the Sept. 2019 Note and the May 2020 Note as set forth herein.

39. As a result of Defendant Agritek's conduct, Defendant Agritek has breached the terms of the Original Notes, the Sept. 2019 Note, and the May 2020 Note, which are all immediately due and payable.

## CAUSES OF ACTION

### COUNT I
### Breach of Contract
(Against Defendant Agritek)

40. Oasis repeats and re-alleges the allegations contained in paragraphs 1-39 as if fully set forth in this Count.

41. Defendant Agritek entered into valid contracts with L2 Capital upon the execution of the Original Notes. The Original Notes were validly purchased by and assigned to Oasis pursuant to the Assignment and Defendant Agritek agreed to treat Oasis as a party to the Original Notes having all the rights of L2 Capital under the Original Notes.

42. Defendant Agritek also entered into valid contracts with Oasis upon the execution of the Sept. 2019 Note and the May 2020 Note.

43. Oasis performed all of the requisite obligations and duties required by the Original

Notes, the Sept. 2019 Note and the May 2020 Note. However, by engaging in the conduct described herein, Defendant Agritek breached several terms of the Original Notes, the Sept. 2019 Note and the May 2020 Note including, but not limited to, "fail[ing] to comply with the reporting requirements of the Securities Exchange Act of 1934 (including but not limited to becoming delinquent in its filings)." Exhibit B-D at § 3.9; *see also* Exhibit E at §3.1.

44. As a result of the breaches, the Original Notes, the Sept. 2019 Note and the May 2020 Note have become immediately due and payable. However, Defendant Agritek has failed to pay the principal, interest, and default penalties due on the Original Notes, the Sept. 2019 Note and the May 2020 Note.

45. As a direct and proximate result of Defendant Agritek's breaches, Defendant Agritek has caused Oasis to suffer damages in an amount to be determined at trial.

## COUNT II
### Unjust Enrichment
(Against Defendant Agritek)

46. Oasis repeats and re-alleges the allegations contained in paragraphs 1-45 as if fully set forth in this Count.

47. Defendant Agritek entered into valid contracts with L2 Capital upon the execution of the Original Notes. The Original Notes were validly purchased by and assigned to Oasis pursuant to the Assignment and Defendant Agritek agreed to treat Oasis as a party to the Original Notes having all the rights of L2 Capital under the Original Notes.

48. Defendant Agritek also entered into valid contracts with Oasis upon the execution of the Sept. 2019 Note and the May 2020 Note.

49. Oasis performed all of its duties under the Original Notes, the Sept. 2019 Note and the May 2020 Note.

50. Defendant Agritek benefitted from the funding provided pursuant to the Original Notes, the Sept. 2019 Note and the May 2020 Note. However, Defendant Agritek failed to perform certain obligations under the terms of the Original Notes, the Sept. 2019 Note and the May 2020 Note. As a result, Defendant Agritek was unjustly enriched to Oasis' detriment.

### COUNT III
### Fraudulent Inducement
(Against Defendants)

51. Oasis repeats and re-alleges the allegations contained in paragraphs 1-50 as if fully set forth in this Count.

52. Defendants, through Defendant Friedman, knowingly misrepresented to Oasis that Defendant Agritek would use the funding under the Original Notes, the Sept. 2019 Note and the May 2020 Note. to cover the cost of auditors so that Defendant Agritek could complete its financials and become current with its public filings.

53. Defendant Friedman knowingly misrepresented these facts in person, during phone conversations and through text messages as set forth above (¶¶ 15, 23, 27, 28, 29, 35). Defendants, through Defendant Friedman, made the misrepresentations described herein to Oasis in an effort to induce Oasis to continue to fund the Original Notes and enter into the Sept. 2019 Note and May 2020 Note, and fund the loans.

54. Whether Defendant Agritek would use the funds to pay its auditors and complete its financials to become current in its public filings was material to Oasis' decision to enter into the Assignment and continuing to invest.

55. Defendants knew that these material misrepresentations were false at the time Defendant Friedman communicated this information to Oasis.

56. Oasis would not have entered into the Assignment and would not have continued to invest in Defendant Agritek if it had known of these material misstatements.

57. Oasis reasonably relied on Defendants' material misstatements when it entered into the Assignment and invested in Defendant Agritek through the Original Notes, the Sept. 2019 Note and the May 2020 Note.

58. Oasis could not have discovered the truth of Defendants' misstatements and omissions through the exercise of ordinary diligence because the information was either kept confidential or known only by Defendant Friedman.

59. Defendant Agritek has failed to repay the Original Notes, the Sept. 2019 Note or the May 2020 Note. Oasis has been damaged as a proximate result of Defendants' fraudulent inducement.

60. Because Defendants, through Defendant Friedman, engaged in fraudulent conduct willfully and maliciously, and with the intent to damage Oasis, Oasis is entitled to an award of damages, including punitive damages.

**COUNT IV**
**Tortious Interference with Contract**
(Against Defendant Friedman)

61. Oasis repeats and re-alleges the allegations contained in paragraphs 1-60 as if fully set forth in this Count.

62. Defendant Agritek entered into valid contracts with L2 Capital upon the execution of the Original Notes. The Original Notes were validly purchased by and assigned to Oasis pursuant to the Assignment and Defendant Agritek agreed to treat Oasis as a party to the Original Notes having all the rights of L2 Capital under the Original Notes.

63. Defendant Agritek also entered into valid contracts with Oasis upon the execution

of the Sept. 2019 Note and the May 2020 Note.

64. Defendant Friedman knew about the Original Notes, Sept. 2019 Note and May 2020 Notes between Defendant Agritek and Oasis, and the debt owed to Oasis by Defendant Agritek at the time Defendant Friedman began stealing assets from Defendant Agritek, including, but not limited to the gaming platform.

65. Defendant Friedman's conduct was improper and led to Defendant Agritek's continued breaches of the Original Notes, Sept. 2019 Note and May 2020 Note due Defendant Friedman's deliberate desolation of Defendant Agritek.

66. Because Defendant Friedman, engaged in this tortious conduct willfully and maliciously, and with the intent to damage Oasis, Oasis is entitled to an award of damages, including punitive damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Oasis Capital LLC respectfully requests that this Court enter a judgment in favor of Oasis Capital LLC and against Defendants:

a. For actual damages in an amount to be proven at trial;

b. For interest and costs;

c. Reasonable attorney's fees pursuant to § 4.5(a) of the Original Notes, § 4.5 of the Sept. 2019 Note and May 2020 Note, and § 6.13 of the Assignment; and

d. For such other legal or equitable relief as the Court deems just and proper.

**DATED:**   March 28, 2023
              Coral Gables, Florida

                              Respectfully Submitted,

                              **HUNTER TAUBMAN FISCHER & LI LLC**

*/s/ Mark David Hunter*
Mark David Hunter, Esquire
USDC-PR Bar No. 308106
2 Alhambra Plaza, Suite 650
Coral Gables, Florida 33134
Telephone:   (305) 629-1180
Facsimile:   (305) 629-8099
E-Mail:      mhunter@htflawyers.com